```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
INTERNATIONAL FIDELITY INSURANCE         :
COMPANY and UNITED STATES FIRE           :
INSURANCE COMPANY,                       :
                                         :
                Plaintiffs,              :    11 Civ. 9240 (DLC)
                                         :
           -v-                           :       OPINION & ORDER
                                         :
THE AULSON COMPANY, INC., AULSON         :
ROOFING, INC., AULSON INDUSTRIAL         :
SERVICES, INC., THE AULSON BUSINESS      :
TRUST, GATOR ROCK, LLC, GREAT ROCK       :
REALTY TRUST, SHELL ROCK REALTY TRUST,   :
SMALL ROCK TRUST, RIVER ROCK REALTY      :
TRUST, ALAN P. AULSON and MAUREEN A.     :
AULSON,                                  :
                                         :
                Defendants.              :
                                         :
---------------------------------------- x
```

Appearances:

For the Plaintiffs:

Eric J. Levine
James M. Van Splinter
Wolff & Samson PC
One Boland Drive
West Orange, NJ 07052

For the Defendants:

Steve Cramer
Trista Watson
Rich, Intelisano & Katz, LLP
915 Broadway, Suite 900
New York, NY 10010

DENISE COTE, District Judge:

    The plaintiffs, International Fidelity Insurance Company

("IFIC") and United States Fire Insurance Company ("US Fire"), are surety companies.  The defendants are a specialty construction company located in New York, the President of that construction company, and other companies in which the President holds an ownership interest.  The plaintiffs have moved for summary judgment on their claims for breach of promissory notes and of a Forbearance Agreement.  For the following reasons, the motion is granted.

BACKGROUND

The following facts are undisputed or as shown by the defendants unless otherwise noted.  In 2002, the Aulson Company was awarded contracts for projects involving the repair and refurbishment of a number of bridges, including the Manhattan Bridge in New York City.  In connection with these projects, the defendants negotiated with IFIC and US Fire to obtain surety bonds guaranteeing the performance and payment obligations of the Aulson Company, Aulson Roofing and Aulson Industrial under the construction contracts.  Before issuing the surety bonds, both of the plaintiffs independently required the defendants to execute indemnity agreements.  An indemnity agreement was executed between defendants Aulson Company, Aulson Roofing, Aulson Industrial, Great Rock Realty, Shell Rock Realty, Small Rock, River Rock Realty, Alan Aulson and Maureen Aulson ("US Fire Indemnitors"), and US Fire on January 2, 2002.  In this

agreement, the US Fire Indemnitors agreed to

> indemnify . . . and hold [US Fire] harmless from and against all demands, claims, loss, costs, damages, expenses and attorneys' fees of whatever kind or nature, sounding in contract, tort or otherwise, and any and all liability therefore, sustained or incurred by [US Fire] by reason of executing or procuring the execution of any said Bond or Bonds . . . .

In consideration of the agreement, US Fire executed two surety bonds; together the bonds carried a maximum obligation or penal sum of $32,338,022.

All of the defendants executed a second indemnity agreement with IFIC on December 22, 2005.  This agreement similarly provided that the defendants

> shall exonerate, indemnify and keep indemnified [IFIC] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain or incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor [the Aulson Company] or Indemnitors to perform or comply with covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

In consideration of this agreement, IFIC executed three surety bonds, carrying in total a penal sum of $12,700,000.

In March of 2007, the Aulson Company advised the defendants that it was financially unable to perform its obligations under the construction contracts, including paying its laborers and material suppliers.  As a result, Koch Skanska Inc. ("Skanska")

the general contractor and obligee on three of the bonded projects, sought to have the plaintiffs fulfill the Aulson Company's obligations.  In connection with satisfying their obligations under the surety bonds, IFIC and US Fire calculated their losses, costs and expenses at $6,400,000 and $5,500,000, respectively.  IFIC demanded payment from defendants of $6,400,000 and US Fire demanded $4,200,000 to hold as security against the losses and expenses it expected to incur.  The defendants refused to make such payments due to financial inability and instead requested a restructuring of the indemnity agreements.

On August 1, 2007, IFIC and US Fire entered into a Forbearance, Restructuring, Intercreditor and Security Agreement (the "Forbearance Agreement") with the defendants.  IFIC and US Fire agreed to liquidate and reduce the principal amounts of indebtedness owed to both to $4,500,000 and $1,500,000, respectively.  The sureties also agreed to forebear on collection of the indebtedness for two years, that is, until July 31, 2009.  In the Forbearance Agreement, the defendants largely waived their right to assert defenses against the plaintiffs.  The Forbearance Agreement provided:

> that none of the Indemnitors has any claim or counterclaim against the Surety with respect to the Indemnity Agreements, or any other matter, any such claims or counterclaims being hereby knowingly and intentionally forever waived and released by the

4

> Indemnitors; and . . . that <u>none of the Indemnitors has any defense to the enforcement of any of the Indemnitors' obligations pursuant to the Indemnity Agreements</u>, any such defense being hereby knowingly and intentionally forever waived and released by the Indemnitors.

(Emphasis Supplied.)  In consideration of this agreement, the defendants concurrently executed separate promissory notes to IFIC and US Fire that reflected the defendants' promise to repay in full the IFIC and US Fire debts by August 1, 2009.  The Forbearance Agreement granted the plaintiffs liens on certain real property (the "Real Estate Collateral") and security interests in a variety of other collateral.  The promissory notes and Forbearance Agreement further provided that in the event of default by the defendants the debt would become immediately due and payable and that "interest thereafter shall accrue at the lesser of nine (9%) percent per annum or the maximum rate of interest permitted under the applicable legal requirements."

With respect to the Manhattan Bridge project, US Fire entered into a takeover agreement with Skanska, obligating US Fire to complete work on the bridge that the Aulson Company had been hired to do.  US Fire then hired the Aulson Company to perform this work.  The Aulson Company's work on the Manhattan Bridge was repeatedly impeded by circumstances outside of its control.  The Aulson Company has estimated that its delay claim

against Skanska has a value of between $4,000,000 and $5,188,349.57.

In August of 2007, at the same time that the parties entered into the Forbearance Agreement, US Fire entered into a collateral security agreement with the US Fire Indemnitors to memorialize the parties' rights and obligations in regard to the bonded contracts. This agreement assigned the defendants' rights to bring its delay claims to US Fire. It provided:

> In consideration for the Surety agreeing to fund the completion of the Bonded Contracts, and as more fully set forth in the certain agreement between the Indemnitors, the Surety and International Fidelity and Insurance Company (the "interparty Collateral Agreement"), the Indemnitors assign to the Surety all right, title and interest in and to all funds due or to become due on the Bonded Contracts and any and all affirmative claims . . . the Indemnitors now have, or may have, on the Bonded Contracts. The Indemnitors recognize, acknowledge and agree that the Surety already possesses the interest set forth herein pursuant to the Indemnity Agreement.

(Emphasis supplied.)

Following the execution of the Forbearance Agreement and the promissory notes, the defendants made payments of $85,000 and $227,902.83 to the plaintiffs on September 28, 2007 and January 30, 2008, respectively. These payments were distributed pro rata between the plaintiffs; IFIC received $235,346.62 and US Fire received $77,556.71. The defendants made no further payments to either IFIC or US Fire on or before August 1, 2009, the maturity date for repayment of the debt set by the

6

Forbearance Agreement and promissory notes.

On March 24, 2011, IFIC, as lead surety, notified the defendants that an event of default had occurred, and demanded payment of $6,891,000 -- the aggregate unpaid principal and accrued interest on the debt as of the date, exclusive of costs. On August 4, IFIC requested repayment under the promissory notes of $7,101,377.58, the figure representing unpaid principal and the accrued interest on the debt as of that date plus costs and expenses.  The parties agree that the unpaid principal due to IFIC under the Forbearance Agreement and IFIC note is 4,264,653.38 and that the unpaid principal due to US Fire under the Forbearance Agreement and US Fire note is $1,422,443.79.

On December 16, 2011, the plaintiffs filed suit against the defendants.  IFIC asserts claims for breach of the Forbearance Agreement and the IFIC promissory note against all of the defendants.  US Fire asserts claims for breach of the Forbearance Agreement and the US Fire promissory note against its indemnitors.

On August 24, 2012, following discovery, the plaintiffs' filed a motion for summary judgment.  This motion was fully submitted on October 9.  For the following reasons, the plaintiffs' motion for summary judgment is granted.

DISCUSSION

Summary judgment may not be granted unless all of the

submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986).

> Where a plaintiff uses a summary judgment motion to challenge the legal sufficiency of an affirmative defense -- on which the defendant bears the burden of proof at trial -- a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element or the non-moving party's case.

Fed. Deposit Ins. Corp. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994)(citation omitted).  When a motion for summary judgment is properly supported, an adverse party

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e); see also Borthwick v. First Georgetown Sec., Inc., 892 F.2d 178, 181 (2d Cir. 1989).  If no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate.

See Anderson, 477 U.S. at 251-52.

The first dispute that must be resolved concerns the law that will be applied here.  The parties dispute whether Massachusetts or New York law governs.

A federal court sitting in diversity applies the choice of law rules of the state in which it sits.  In re Coudert Bros. LLP, 673 F.3d 180, 186 (2d Cir. 2012).  New York Courts defer to "the choice of law made by the parties to a contract" unless "the most significant contacts with the matter in dispute are in another state."  Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003) (citation omitted); cf. Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996).

The parties have agreed that Massachusetts law will govern the claims brought by the plaintiffs.[1]  The plaintiffs claim that the defendants breached the Forbearance Agreement, the IFIC promissory note, and the US Fire promissory note.  The Forbearance Agreement selected Massachusetts law as the governing law.  It reads as follows:

> Governing Law; No Third Party Rights.  This Agreement, the Notes, the other Debt Documents and the rights and obligations of the parties hereunder and thereunder shall be governed by and construed and interpreted in accordance with the internal laws of the Commonwealth of Massachusetts without regard to principals of conflicts of law. . . .

---

[1] No argument has been made that the most significant contacts with the matter in dispute are in New York.

9

The promissory notes were executed concurrently with the Forbearance Agreement.  A dispute arising from the Forbearance Agreement and promissory notes involves the "rights and obligations" of the parties to those documents.  The plain meaning of the Forbearance Agreement indicates therefore that Massachusetts law is to govern the plaintiffs' claims that the defendants breached the Forbearance Agreement and the promissory notes.

The defendants argue that the relevant governing law is the law of New York.  They point to the collateral security agreement -- executed by US Fire and the US Fire Indemnitors concurrently with the Forbearance Agreement -- which provides that the collateral agreement "and all its terms and conditions shall be governed by and interpreted in accordance with the laws of the State of New York."  The defendants have not explained, however, why claims for breach of the Forbearance Agreement and enforcement of promissory notes executed under that agreement should be governed by the choice of law provision contained in a separate agreement.  The defendants' argument that New York law applies to the plaintiffs' claims appears to stem from their contention, which is rejected below, that the collateral security agreement obligated the plaintiffs to pursue the Aulson

10

Company's affirmative delay claim against Skanska.[2]  The defendants' attempt to graft the collateral security agreement's choice of law provision onto the plaintiffs' claims fails.  The plaintiffs' claims do not arise out of the collateral security agreement.  Thus, the law that applies to the question of whether the plaintiffs are entitled to recover for the defendants' breach of the Forbearance Agreement and the promissory notes is a question governed by the law of Massachusetts.

1. Enforcement of Promissory Notes and Breach of Forbearance Agreement

The plaintiffs have shown that they are entitled to enforce the Forbearance Agreement and promissory notes.  To establish a claim for breach of contract under Massachusetts law the plaintiffs must demonstrate that (1) the parties reached a valid and binding agreement; (2) the defendants' breached the terms of the agreement; and (3) the plaintiffs suffered damages from the breach.  Michelson v. Digital Fin. Servs., 167 F.3d 715 (1st Cir. 1999); see also Singarella v. City of Boston, 342 Mass. 385, 387 (1961).

The plaintiffs have shown that there is no material issue

---

[2] Although the collateral security agreement was only signed by US Fire and the US Fire Indemnitors, the defendants argue that IFIC is equally bound by it because the Forbearance Agreement appointed IFIC as the Lead Surety and gave IFIC responsibility for pursuing the Aulson Company's affirmative claims that had been assigned to US Fire.

of fact concerning any element of their claims.  The plaintiffs have submitted the IFIC and US Fire promissory notes with their motion as well as notarized acknowledgment forms for each of the signatories.  The defendants do not dispute the authenticity of the notes or the signatures.  The parties also agree that the Forbearance Agreement is a valid and binding agreement.  The defendants concede that after January 30, 2008 they made no further payments to IFIC or US Fire before or on the maturity date set for repayment in the Forbearance Agreement.  Under the terms of the Forbearance Agreement, this constituted an event of default.  The plaintiffs have shown damages in the form of the liquidated damages as expressly provided for in the Forbearance Agreement and the notes.

2. Duty to Pursue Delay Claim

The defendants present two related arguments against granting summary judgment to the plaintiffs.  First, the defendants argue that the plaintiffs breached their duty of good faith and fair dealing when they failed to investigate and pursue the Aulson Company's affirmative delay claim against Skanska.  Second, the defendants contend that the plaintiffs breached their obligation to mitigate damages by failing to take reasonable steps to generate income from the assets that the Aulson Company had assigned to them, i.e., the Aulson Company's affirmative delay claim against Skanska.  Neither of these

contentions raises a question of material fact that prevents an award of summary judgment to the plaintiffs.

Under Massachusetts law, every contract contains an implied covenant of good faith and fair dealing. Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991). This covenant provides that neither party to the contract shall do anything that has the effect of destroying or harming the right of the other party to receive the fruits of the agreement. Id. The implied covenant cannot, however, be invoked to "create rights and duties not otherwise provided for in the existing contractual relationship." Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004).

No provision in the promissory notes or the Forbearance Agreement obligates either IFIC or US Fire to investigate or to pursue the affirmative claims of the Aulson Company that were assigned to the sureties in the indemnity agreements. Moreover, the implied covenant of good faith and fair dealing prohibits one party from doing anything that destroys the right of the other party to enjoy the fruits of the contract. The defendants have not shown that the plaintiffs have acted to deprive the defendants of the benefits they acquired under either the Forbearance Agreement or the notes. Indeed, the defendants have already enjoyed the fruits of the Forbearance Agreement. In consideration for the defendants' promise to repay their

indebtedness upon maturity of the promissory notes, the plaintiffs agreed to and for two years did forbear on collecting the debt the defendants owed to the plaintiffs.  The plaintiffs also reduced the total amount of the defendants' indebtedness.  Thus, the defendants have already enjoyed the fruits of their bargain and now seek to be relieved from performing their obligations.  The implied covenant of good faith and fair dealing is not meant to serve such ends.

The defendants cite a host of cases to argue that the plaintiffs have breached a duty of good faith by failing to investigate and pursue the Aulson Company's affirmative delay claim against Skanska.  These cases are unpersuasive for a number of reasons.  Nearly all of the cases involve claims by sureties against the principals for indemnification.  The principals in these cases argued that the surety had failed to act in good faith in investigating and paying the claim for which it sought indemnification.  This line of cases is inapposite.  Here, the defendants are not contesting the plaintiffs' decision to pay out on claims asserted against the Aulson Company by third-parties for the Aulson Company's breach of the bonded contracts.[3]  Instead, the defendants complain that

---

[3] Indeed, the defendants expressly waived any claims they might have had against the plaintiffs for improper settlement of claims made against the defendants under the bonds when they entered the Forbearance Agreement.  In the Forbearance Agreement

the plaintiffs chose not to investigate and pursue an affirmative claim that the Aulson Company may have against a third-party in order to off-set the defendants' indebtedness to the plaintiffs.

Three of the cases cited by the defendants relate to affirmative claims of a principal that are assigned to a surety through an indemnity agreement.  See Compania De Remorque y Salvamento, S.A. v. Esperance, Inc., 187 F.2d 114, 117 (2d Cir. 1951); General Insur. Co. of Am. v. Mezzacappa Bros., Inc., 2003 WL 22244964, at *1 (E.D.N.Y. 2003); Bell BCI Co. v. Old Dominion Demolition Corp., 294 F.Supp.2d 807, 809 (E.D. Va. 2003). Although more on point, these cases also do not support the defendants' contention that the plaintiffs have an obligation to investigate and pursue the defendants' affirmative claims.  In these cases, the surety chose to settle its principal's affirmative claims.  To varying degrees these three cases support the principle that if a surety chooses to settle a principal's affirmative claim, the settlement must be entered in good faith.  None of these cases involves a situation in which

---

the defendants agreed "(iii) that none of the Indemnitors has any claim or counterclaim against the Surety with respect to the Indemnity Agreements, or any other matter, any such claims or counterclaims being hereby knowingly and intentionally forever waived and released by the Indemnitors; and (iv) that none of the Indemnitors has any defense to the enforcement of any of the Indemnitors' obligations pursuant to the Indemnity Agreements, any such defense being hereby knowingly and intentionally forever waived and released by the Indemnitors."

15

the surety is suing to enforce a forbearance agreement and promissory notes rather than suing to enforce an indemnity agreement. Nor do these cases address a situation in which the indemnitor has waived all claims against the indemnitee arising out of the indemnity agreement. Furthermore, none of these cases holds that a surety has an obligation to pursue a principal's affirmative claims.

The defendants next suggest that certain language found in the collateral security agreement and the Forbearance Agreement obligated both sureties to investigate and pursue the defendants' affirmative claim against Skanska. The collateral security agreement between US Fire and the US Fire Indemnitors provides that "the Indemnitors assign to the Surety all right, title and interest in ... all affirmative claims," and that "the Surety has the sole discretion to settle any affirmative claims. . . ." The Forbearance Agreement appoints IFIC as lead surety and gives IFIC

> the power and right . . . upon the occurrence and continuance of any Event of Default . . . to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect the Collateral or any part thereof and to enforce any other right in respect of any Collateral.

Nothing in this contractual language, however, suggests that either IFIC or US Fire was obligated to investigate and pursue Aulson's affirmative claims; the "power and right" to sue on a

principal's affirmative claim does not impose an obligation and responsibility to do so.[4]

The defendants' second affirmative defense is largely repetitive of their first.  The defendants argue that summary judgment should be denied because, by failing to investigate and pursue the Aulson Company's affirmative claim for delay against Skanska, the plaintiffs failed to mitigate their damages.

Massachusetts law recognizes a duty to mitigate damages. The Massachusetts Supreme Court has explained:

> It is not infrequently said that it is the 'duty' of the injured party to mitigate his damages so far as that can be done by reasonable effort on his part. Since there is no judicial penalty, however, for his failure to make this effort, it is not desirable to say that he is under a 'duty.'  His recovery against the defendant will be exactly the same whether he makes the effort and mitigates his loss, or not; but if he fails to make the reasonable effort, with the result that his injury is greater than it would otherwise have been, he cannot recover judgment for the amount of this avoidable and unnecessary increase. The law does not penalize his inaction; it merely does nothing to compensate him for the loss that he helped

---

[4] In some cases, a surety's duty to reasonably investigate claims brought against its principal by a third-party will require the surety to investigate the principal's affirmative counterclaims against the third-party.  For example, where a third-party seeks payment from the surety because the principal breached a bonded contract with the third-party, the surety may need to investigate first whether its principal has a claim that the third-party also breached the contract.  One case cited by the defendants, involves such a situation.  See Cincinnati Ins. Co. v. Savarino Const. Corp., 2011 WL 1068022, *8-*12 (S.D. Ohio 2011).  The present case is different, however, because in the Forbearance Agreement the defendants waived any claims they may have had based upon the plaintiffs' payment and settlement of claims under the surety bonds.

17

to cause by not avoiding it.

McKenna v. Commissioner of Mental Health, 347 Mass. 674, 676 (1964)(citation omitted).  Thus, "a party cannot recover damages for loss that he could have avoided by such reasonable efforts as are appropriate in the circumstances to avoid loss." Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass.App.Ct. 582, 612 (2007) (quoting Restatement (Second) of Contracts § 305(1) comment b (1981)).

But, the duty to mitigate has little relevance in the context of a liquidated damages provision.  Under Massachusetts law a liquidated damages clause is enforceable "so long as it is not so disproportionate to anticipated damages as to constitute a penalty."  Cummings Prop., LLC v. National Communications Corp., 449 Mass. 490, 494 (2007).  If a liquidated damages clause is enforceable, "mitigation is irrelevant and should not be considered in assessing damages."  NPS, LLC v. Minihane, 451 Mass. 417, 423 (2008).  An acceleration clause that provides that a party's default under the contract will cause certain amounts to become immediately due may constitute an enforceable liquidated damages provision as long as it meets the standard described above.  Cummings Prop., LLC, 449 Mass. at 494.  Thus, so long as an acceleration clause does not impose a penalty on the breaching party, mitigation is irrelevant and should not be considered.  Panagakos v. Collins, 80 Mass. App.Ct. 697, 702-03

18

(2011).

The defendants have not shown that the plaintiffs had any obligation to mitigate damages. The Forbearance Agreement contains an acceleration clause that provides that upon the occurrence of an event of default "all amounts outstanding (with accrued interest thereon, if any) and all other Obligations owing to the Surety under the Debt and Debt Documents" shall be declared due. The parties agree that the unpaid principal due to IFIC under the Forbearance Agreement and IFIC note is 4,264,653.38 and that the unpaid principal due to US Fire under the Forbearance Agreement and US Fire note is $1,422,443.79. The parties also agree that pursuant to the Forbearance Agreement and notes, upon an event of default the defendants are obligated to pay accrued interest on the unpaid indebtedness due to the sureties at the default rate of 9% from the date of default to the entry of judgment. The acceleration clause and the other provisions in the Forbearance Agreement setting the amount due to the sureties are enforceable liquidated damages clauses. These provisions reasonably anticipate the plaintiffs' damages caused by the defendants' refusal to pay off their indebtedness. Cf. Leshefsky v. American Employers' Ins. Co., 293 Mass. 164, 173 (1936). Because the plaintiffs seek to recover under an enforceable liquidated damages provision, they had no duty to mitigate damages.

19

CONCLUSION

The plaintiffs' August 24 motion for Summary Judgment is granted. By December 17, 2012 the plaintiffs shall submit any application for attorney's fees, costs and expenses, along with a proposed judgment.

SO ORDERED

Dated:   New York, New York
         December 4, 2012

                                    _____
                                         DENISE COTE
                                    United States District Judge